UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HANK DEZONIE                                         :
                                                     :
                    Plaintiff,                       :        08CV11261 (HB)
                                                     :        **OPINION & ORDER**
     -against-                                       :
                                                     :
ASSET PROTECTION & SECURITY, INC.,                   :
and WILLIAM GOLOWACH                                 :
                                                     :
                    Defendants.                      :
-------------------------------------------------------------x
**Hon. HAROLD BAER, JR., United States District Judge:**

      Defendants Asset Protection & Security, Inc. ("Asset Protection") and William Golowach ("Golowach") move to dismiss the complaint filed against them by Plaintiff Hank Dezonie ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(5) for improper service of process. I held a traverse hearing on June 22, 2009, and I heard testimony from both the process server and the Asset Protection employee who was allegedly served on February 27, 2009. For the reasons that follow, Defendants' motion to dismiss is GRANTED with respect to Golowach and DENIED with respect to Asset Protection.

## BACKGROUND

      On December 24, 2009, Plaintiff filed this employment discrimination action against Asset Protection, a security services firm and his former employer, and Golowach, a supervisor at the company. On February 26, 2009, a few hours before the Rule 16 conference that had been scheduled for more than a month and half, Plaintiff's counsel wrote to the Court to request an adjournment because he "did not receive an affidavit of service from the process server that service of process has been made." I granted the requested adjournment. The next day, Plaintiff's counsel sent his son, Stephen E. Jackson ("Jackson"), who he employs as a paralegal and who had experience serving legal papers, to 201 Varick Street in Manhattan to serve a summons and complaint on Asset Protection and Golowach.[1] (Tr. of June 22, 2009 Hearing ("Tr.") at 2-3.)  Jackson testified that when he arrived at the building on Varick Street he passed

---

[1] The Court takes judicial notice of the fact that 201 Varick Street is a federal building which houses, among other things, an immigration court and a National Archives Regional Facility.

1

through security, told a security guard he was looking for Asset Protection, and was directed to the fourth floor. (*Id*. at 3.)

The testimony of the two witnesses, Jackson and Edmister, as to what transpired on the fourth floor varies significantly, and so I recount each version of events in turn.  Jackson testified that when he arrived on the fourth floor, he joined a group of people who were waiting in line to speak to a security guard who was sitting at a desk and wearing a uniform distinct from that worn by the guard he had encountered on the first floor.  According to Jackson, when he approached the desk he told the guard that he worked for a law firm and was there to serve a summons and complaint. (*Id*. at 3-4.)  In Jackson's account, the guard then picked up the phone and said "hold on.  We will get somebody that could [sic] take it." (*Id*. at 4.)  Shortly thereafter, a woman who Jackson understood to be Captain Linda Edmister ("Edmister") arrived in the fourth floor lobby.  According to Jackson's testimony, Edmister asked him what he had and Jackson showed her two summonses and two complaints, which he carried in an unsealed manila file, and told her he was there to serve a summons and complaint on Asset Protection and Golowach.  (*Id*. at 5, 10.)  Jackson testified that Edmister looked at one of the sets of summons and complaints and "said she can accept them" (*Id*.)   Jackson then returned to his father's office and completed an affidavit of service, but he did not mail the affidavit or a copy of the complaint. (*Id*. at 7, 9, 11.)

Edmister, who is a "transportation manager" for Asset Protection and at the relevant time was responsible for "schedules and administrative tasks for Asset Protection as it relates to 201 Varick Street," testified differently.  According to Edmister, she was called out to the front desk on the fourth floor to "sign for some papers because the mail clerk was unavailable." (*Id*. at 13.)  In Edmister's account, Jackson handed her a sealed manila envelope with the names Asset Protection and William Golowach on it and she said she could sign for the envelope but did not open it.  (*Id*. at 13, 16.)  Edmister testified on cross examination that Jackson never said a word to her, that the summonses and complaints were sealed in an envelope and that she did not see the contents until she called Golowach into her office and he opened it in her presence.  (*Id*. at 16-17.)

The day after Jackson left the summons and complaint with Edmister at 201 Varick Street, February 27, 2009, an unsigned and un-notarized affidavit of service was electronically filed in this case.   The affidavit of service, which was prepared for signature by Jackson and to be notarized by his father, states that Jackson "served the defendants with the summons and

2

complaint on Captain Linda Edmister at 201 Varick Street . . . [and] Captain Edmister indicated that she was authorized to accept service on behalf of defendants." Plaintiff's counsel has not delivered to the Clerk of Court the original affidavit of service with the summons and a copy of the electronic filing receipt attached, as is required by this District's Electronic Case Filing Rules & Instructions.  Plaintiff's counsel stated that he did not bring the original affidavit of service to the traverse hearing as a consequence of a miscommunication with his office and an earlier appearance in the Bronx.  (*Id*. at 20.)  Earlier today, Plaintiff's counsel faxed to my Chambers a signed copy of the affidavit of service.

## LEGAL STANDARD

The plaintiff bears the burden of proving adequate service. *See J.G. ex rel. J.G. v. Board of Educ. of Briarcliff Manor Union Free School Dist.*, No. 07 Civ. 7245 (KMK), 2008 WL 3843523, * 2 (S.D.N.Y. Aug. 14, 2008).  To satisfy this burden, "[c]onclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served." *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y. 1997), *aff'd,* 173 F .3d 844 (2d Cir.1999). Similarly, defective service is not cured or overcome "on the mere assertion that a defendant had actual notice." *J.G. ex rel. J.G*, 2008 WL 3843523, * 2 (quoting *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C .V.,* 451 F.Supp.2d 585, 589 (S.D.N.Y. 2006)).

## DISCUSSION

### A.  Service on Golowach

Pursuant to Rule 4(e), an individual defendant may be served personally, by leaving a copy of the summons and complaint "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or under New York law, which is applicable here, by an additional two-step method.  Pursuant to N.Y. C.P.L.R. § 308(2) a natural person may be served by

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served *and* by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential"  . . . within twenty days of [the delivery].

N.Y. C.P.L.R. §308(2).

Here, Edmister's testimony makes clear that 201 Varick Street was Golowach's "actual place of business."[2] However, there is no indication whatsoever that Plaintiff complied with the second-step of service pursuant to N.Y. C.P.L.R. §308(2) by mailing the summons and complaint to Golowach either at his last known residence or at 201 Varick Street. The unsigned affidavit of service does not state that the process was mailed and Jackson testified that he did not mail a copy of the summons and complaint to anyone. (Tr. at 11.)

Consequently, for service to be sustained, Golowach must have been served personally. However, it is clear from the testimony that Jackson did not serve Golowach personally and the "redelivery" concept articulated by the New York courts is not a substitute for personal service. New York courts have upheld service where a process server acts with "due diligence in attempting to fulfill the statutory requirements of personal delivery, but nevertheless serves a person not authorized to accept service and that person redelivers the papers to one who is authorized to accept service." *Leo v. General Electric Co.*, 111 F.R.D. 407, 412-13 (S.D.N.Y. 1986) (citing *McDonald v. Ames Supply Co.,* 22 N.Y.2d 111 (1968)) (footnote and internal punctuation omitted). But the New York Court of Appeals has "refused to recognize delivery of process to another person as constituting personal delivery to defendant."[3] *Macchia v. Russo*, 505 N.Y.2d 591, 593 (1986) (per curiam). Thus, in *Macchia*, service was not sustained where it was made upon the defendant's son outside of a home where the son promptly took the papers inside to his father. *Id.* Similarly, even though Golowach actually received the summons and complaint in Edmister's office, Edmister's "redelivery" of the complaint is no substitute for personal service. *Macchia*, 505 N.Y.2d at 593; *see also Melkaz International Inc. v. Flavor Innovation Inc.*, 167 F.R.D. 634, 643 (E.D.N.Y. 1996) (service on corporation sustained under "redelivery" principle, but not against individual defendant who was not personally served and received summons and complaint from her assistant); *Kreidman v. Flatbush Medical Center*, 163 A.D.2d (2d Dep't 1990).

After delivering the summons and complaint to Golowach's actual place of business, all Plaintiff's counsel needed to do to perfect service was, within twenty days, mail a copy to 201 Varick Street in an envelope marked "personal and confidential." He did not. The service on

---

[2] Edmister testified that she went back to her office and "called Billy down . . . he doesn't have an office or anything like that. But I called him down. He was in processing, he came down, opened it up." (Tr. at 14.)

[3] Furthermore, where as here the process server did not even ask for the person to be served, it is hard to fathom that he acted with "due diligence." *Leo*, 111 F.R.D. at 412.

4

Golowach was thus ineffective, and the Defendants' motion to dismiss the complaint against him must be GRANTED.

### B. Service on Asset Protection

The same result does not obtain with respect to service on Asset Protection. The Defendants aver that Asset Protection is a "partnership doing business in this state." Defs.' Mem. at 2. Consequently, Rule 4(h) governs the sufficiency of service on Asset Protection. Pursuant to Rule 4(h), a corporation or partnership may be served by, *inter alia*, following the law of the forum state or by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law." New York law similarly provides that "personal service upon a corporation ... shall be made by delivering the summons . . . to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1).

"New York courts have construed § 311 broadly." *Tadco Construction Corp. v. Peri Framework Systems, Inc.*, 460 F.Supp.2d 408, 410 (E.D.N.Y. 2006). If Jackson's testimony is credited, the facts of this case fit squarely within a longstanding and well-developed line of New York case law under which service on an employee of a corporate defendant is upheld as valid service on her employer, whether under the concept of "redelivery" or "apparent authority." Thus, for example, in *Fashion Page Ltd. v. Zurich Ins. Co.*, 50 N.Y. 2d 265, 270-71 (1980), the process server arrived at the defendant corporation's offices, told the receptionist that he had a summons and complaint and asked whom he should see. The receptionist instructed the process server to "'see the girl sitting down there,'" and that employee looked at the papers and said "'Okay, leave it with me . . . I'll take it.'" *Id.* Service on the corporation was sustained even though the employee who accepted the papers was not expressly authorized to accept service on the corporation's behalf. *Id.*; *see also Tadco Construction Corp.*, 460 F.Supp.2d at 411 ("[S]ervice may be sustained where the employee accepting service has apparent authority to do so."); *Melkaz International,* 167 F.R.D. at 642-43; *Arbitron, Inc. v. Marathon Media*, *LLC*, No. 07 Civ. 2099 (DC), 2008 WL 892366, * 4 (S.D.N.Y. Apr. 1, 2008) (finding service proper under New York law where process server went to defendant's corporate offices, spoke to the receptionist, and she accepted the papers); *M'Baye v. World Boxing Ass'n*, 429 F.Supp.2d 652, 657 (S.D.N.Y. 2006) (upholding service where process server traveled to defendant's office and

left package with someone he reasonably believed to be defendant's receptionist and corporate defendant had actual, prompt notice of suit).  As the New York Court of Appeals stated in *Fashion Page Ltd.*, service should be sustained if it is "made in a manner which, objectively viewed, is calculated to give the corporation fair notice." 50 N.Y.2d at 272.

Although Plaintiff's counsel's lack of diligence in failing to mail a copy of the summons and complaint to Golowach or file a signed copy of the affidavit of service gives me considerable pause, I credit Jackson's account of what transpired in the fourth-floor lobby on February 27, 2009, because I find Edmister's testimony incredible and in tension with the affidavit of service filed the next day.  Jackson testified that he informed both the security guard on the fourth floor and Edmister that he had "a summons and complaint for Asset Protection and Mr. William Golowach."  (Tr. at 10.)  While based upon his testimony I am skeptical that Jackson in fact twice declared his purpose so directly with those precise words, I find far more incredible Edmister's testimony that Jackson merely stood in front of her and said nothing at all.  (Tr. at 16).  The affidavit of service that Jackson testified he prepared upon his return to the office identifies Captain Edmister as the person who accepted service.  But without *some* exchange, it seems unlikely that Jackson would have learned Edmister's name.

To be sustained, service on Asset Protection had to be reasonably calculated to give the company fair notice of the suit.  *Fashion Page Ltd.*, 50 N.Y.2d at 272. Under Jackson's account, this was accomplished both when he informed Edmister of the purpose of his visit and when she looked at the papers and said "I can take these."  (Tr. at 10.)  I do not find credible Edmister's testimony that Jackson simply handed her a sealed envelope in total silence and headed for the door.  Consequently, under the New York courts' broad construction of N.Y. C.P.L.R. §311 adopted by the federal courts in this Circuit, I find that the service on Asset Protection was valid.

### C.  Proof of Service

Not only are Plaintiff's counsel's halfhearted attempts to serve his client's complaint troubling in their own right, but his apparent apathy towards compliance with the rules for proof of service under both the Federal and Local Rules deserves a parting comment.  Plaintiff's counsel electronically filed an unsigned affidavit of service more than four months ago, but provided the Court with a signed copy of the affidavit only today and to date has not delivered the original to the Clerk of Court as required.  Unless service is waived or made by a United States Marshal, Rule 4(l)(1) requires proof of service to be made to the court "by the server's

affidavit. However, pursuant to Rule 4(l)(3) "[f]ailure to prove service does not affect the validity of service" and "[t]he court may permit proof of service to be amended." For the reasons stated above, Jackson's testimony at the traverse hearing was sufficient to meet Plaintiff's burden of proof that service was valid, and a "'request under Rule 4(l) for permission to amend the proof of service, rather than the process itself, rarely should be refused.'" *Nolan v. City of Yonkers*, 168 F.R.D. 140, 143 (S.D.N.Y. 1996) (quoting Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1132 at 364 (2d ed. 1987 & Supp.1995)). Consequently, while playing fast and loose with the requirements for proving service cannot be condoned, Plaintiff's missteps in this regard do not affect the validity of service on the entity. As to the individual Defendant, Golowach, the Plaintiff has a week from the date hereof, albeit already beyond the 120 day period for service, to accomplish valid service or the complaint against Galowach will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for improper service of process is GRANTED with respect to Golowach and DENIED with respect to Asset Protection. The complaint against Golowach is dismissed without prejudice and will be dismissed with prejudice unless, by July 9, 2009 the Plaintiff adequately demonstrates valid service and compliance with the local and federal rules for proof of service. The parties are directed to appear for a pretrial conference on August 6, at 3:30 P.M. The Clerk of Court is directed to close this motion and remove it from my docket.

SO ORDERED
June 30, 2009
New York, New York

U.S.D.J.

7